UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| W. C.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:07-cv-1331-SEB-DML |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review and Motion for Remand**

W.C., a minor, seeks judicial review of the determination by the Commissioner of the Social Security Administration ("Commissioner") that she was not eligible for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 301, *et seq.* (the "Act").

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

### I. Background

On April 10, 2003, an application for child's SSI was filed on behalf of W.C. The application was denied initially and upon reconsideration. W.C.'s request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on July 16, 2004. W.C. and her mother were present, with their attorney. Medical and other records were introduced into evidence, and W.C. and her mother testified. A subsequent hearing was conducted on February 8, 2005, during which additional evidence was submitted. The ALJ issued a decision on February 15, 2006, denying benefits. The ALJ's decision became the final administrative decision on August 9, 2007, when the Appeals Council denied W.C.'s request for review, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review followed. The court has jurisdiction over the complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1]The plaintiff is a minor, and therefore only her initials are used in the caption. *Fed. R. Civ. P.* 5.2(a)(3).

The ALJ's decision included the following findings: (1) W.C. was born on April 10, 1991, and was in the 7th grade at the time of the ALJ's decision; (2) W.C. had not engaged in substantial gainful activity since the alleged onset date; (3) W.C. had severe impairments; (4) W.C.'s learning disorder, borderline intellectual functioning, attention deficit/hyperactivity disorder ("ADHD"), and personality problems did not meet or medically equal the severity of the impairments listed in Part A or Part B of Appendix 1 to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations; (5) W.C. did not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and did not functionally equal the severity of the listings; and (6) W.C.'s subjective complaints were considered credible only to the extent they were supported by the evidence of record as summarized in the text of the ALJ's decision. With these findings in hand, and through the application of applicable rules, the ALJ concluded that W.C. had not been under a "disability" at any time from the alleged onset date through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

An individual under the age of 18 shall be considered disabled for purposes of SSI if that individual has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

To be found disabled, a child must show that (1) she is not engaged in performing substantial gainful activity; (2) she has a medically determinable impairment that is severe; and (3) her impairments meet, medically equal, or functionally equal the listings.  20 C.F.R. § 416.924(b), (c), (d).  At step three of the evaluation process, if a child's impairments do not meet or medically equal any listing, the ALJ will determine whether the child's impairments functionally equal the listings.  20 C. F. R. § 416.926a.  In doing so, an ALJ considers how a child functions in six domains:

   (i) Acquiring and using information;
   (ii) Attending and completing tasks;
   (iii) Interacting and relating with others;
   (iv) Moving about and manipulating objects;
   (v) Caring for yourself; and,
   (vi) Health and physical well-being.

20 C. F. R. § 416.926a(b).

2

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

W.C. argues that substantial evidence does not support the ALJ's step three findings. She also proposes that the original onset date of April 10, 1991, be amended to September 2005. She also seeks a sentence six remand based on new evidence.

#### 1.     Step Three Issues

The ALJ determined that W.C. had severe impairments consisting of learning disorder, borderline intellectual functioning, ADHD, and personality problems. (R. at 24). The ALJ determined that W.C.'s impairments did not meet or equal Listings 112.02 (organic mental disorders), 112.05 (mental retardation), 112.08 (personality disorders) or 112.11 (ADHD). The ALJ further determined that W.C.'s impairments, singly or in combination, were not "functionally equal" to the listings. W.C. challenges this last conclusion.

To "functionally equal" the listings, a claimant's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C. F. R. § 416.926a(a).[2] The ALJ determined that W.C. had "marked" limitations in acquiring and using information; "less than marked" limitations in attending and completing tasks; "less than marked" limitations in interacting and relating with others; no limitations in moving about and manipulating objects; "less than marked" limitations in caring for herself (self care); and no limitations in health and physical well-being. (R. at 18-23). W.C. contends that the uncontradicted evidence supports a finding that W.C. had at least a "marked" limitation in the domains of interacting and relating with others, caring for yourself (self-care), and health and physical well-being. The court agrees that at least the domain of caring for yourself (self-care) warrants further consideration.

---

[2]The regulations provide that a claimant has "a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C. F. R. § 416.926a(e).

The ALJ discussed the caring for yourself (self-care) domain, noting that the issue is "how well the child maintains a healthy emotional and physical state including appropriately seeking and maintaining physical and emotional wants and needs; coping with stress and environmental changes; and caring for his or her own health, possessions, and living area." (R. at 21). The ALJ noted that the regulations contained some examples of limited functioning, but the ALJ did not mention the example of engaging in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication) or ignoring safety rules. *Id.* (citing 20 C.F.R. 416.926a(k)).

The ALJ discussed evidence from a mental status examination conducted in May 2003, noting that W.C. dressed, bathed, and groomed herself appropriately and independently, and sometimes cleaned the house. (R. at 21). The ALJ acknowledged that in April 2003 a teacher reported that W.C. had slight problems in being patient, identifying and appropriately asserting emotional needs and using appropriate coping skills to meet demands of the school environment. *Id.* W.C. had an obvious problem in knowing when to ask for help. *Id.*

The ALJ also mentioned that W.C. was admitted to a hospital inpatient psychiatric unit on August 30, 2005, having decompensated three to four weeks prior to admission, with increased depressive symptoms and having tried to kill herself. (R. at 21-22). W.C. was admitted "to ensure her safety and those around her." (R. at 207). The ALJ noted that just prior to the hospitalization, W.C. had been visiting her father and was angry with him. (R. at 22). W.C. had a history of substance abuse (marijuana and cigarettes). *Id.* The admitting diagnosis was bipolar disorder, history of ADHD and marijuana use. *Id.* The ALJ did not explain how he weighed the evidence of W.C.'s drug abuse, increasing depression and suicide attempt. It is difficult to conceive of a greater illustration of a child not coping well with stress and not caring for herself than an attempt to take her own life.

The psychological examination conducted in February 2005, prior to the suicide attempt, revealed that emotionally, W.C. had multiple difficulties including severe depression and anxiety, probable somatization, a tendency toward acting out and problems with emotional control and restraint, raising a strong possibility of an underlying bipolar disorder. (R. at 190). Some thought process abnormalities were secondary to her IQ of 72. *Id.* The ALJ did not discuss this evidence when evaluating this domain.

The ALJ must build an accurate and logical bridge between the evidence and the result to permit meaningful judicial review of the administrative findings. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir.2003); *Sarchet v. Chater*, 78 F.3d 305, 307 (1996). If the evidence on which the ALJ relied does not support the conclusion, the decision cannot be upheld. *Blakes*, 331 F.3d at 569. Although the ALJ recited the evidence of W.C.'s 2005 inpatient psychiatric hospitalization, he did not build a logical bridge between that evidence and his conclusion that W.C. had a "less than marked" limitation in her ability to care for herself. Furthermore, the ALJ failed to weigh the findings of the 2005 psychological examination in this context.

W.C. further contends that the ALJ improperly failed to find the testimony of W.C.'s mother credible. The Commissioner did not respond to this contention. The ALJ found W.C.'s mother less than credible because her testimony differed from the reports of W.C.'s behavior at school.  (R. at 23). W.C. acknowledges that there is a stark contrast between reports of how she behaved in a controlled self-contained school classroom and how she behaved outside the classroom. There is no basis on which to find, however, that only one line of evidence could be credible. No evidence supports a finding that W.C. behaved the same way at home as she did at school, nor was the ALJ required to choose between the reports of behavior at school and of behavior away from that environment. The February 2005 psychological report notes that W.C.'s mother stated that W.C. thrived in school and did not have behavioral problems there. (R. at 187). The ALJ reasoned that "if this discrepancy is in fact a reality there are factors in the home environment significantly contributing to the claimant's symptoms." (R. at 23). Regardless of whether the "home environment" did or did not contribute to the difference in behavior, the ALJ's reasoning does not support a finding that W.C.'s mother was not, in fact, credible.

Although the ALJ need not discuss every piece of evidence, he may not "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In this case the ALJ selected portions of the record to conclude that W.C.'s symptoms were not as severe as the complete record indicates. The court "require[s] an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies." *Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007). With regard to the finding that the mother was only partially credible, substantial evidence does not support the ALJ's conclusion. With regard to the caring for yourself domain, the ALJ did not provide an adequate explanation of the weight given to the 2005 evidence. The ALJ's finding that W.C.'s ability to care for herself was "less than marked" is not supported by substantial evidence.

Under these circumstances, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). For the above reasons, the ALJ's decision must be remanded for further proceedings.

### 2. Motion for Remand

W.C. seeks a remand pursuant to sentence six of 42 U.S.C. § 405(g). A court may order a "sentence six" remand when a claimant presents new, material evidence which, for good cause, she could not have presented in a prior proceeding. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997); *Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir.1996). Evidence is "new" if it did not exist or was unavailable to the claimant at the time of the administrative proceeding. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). To be material, the evidence must "'relate to the claimant's condition during the relevant time

period encompassed by the disability application under review.'" *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999) (quoting *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989)). In addition, such evidence is "material" if there is a reasonable probability that it would have changed the outcome of the ALJ's decision. *Schmidt*, 395 F.3d at 742. The last hearing in this case was held on February 8, 2005, and the ALJ's decision was issued on February 16, 2006.

W.C. has submitted evidence of her October 23, 2007, admission to an adolescent psychiatric unit on a transfer from another hospital emergency room. She had been angry and out of control, threatening harm to herself. Her therapist arranged for the hospitalization because she believed that there was a risk that W.C. would harm herself or others. The hospital records indicate that W.C. had a history of bipolar disorder, mood swings, periods of rage and cycles of depression, but that recently she had had increasing problems. W.C. remained an inpatient on the psychiatric unit until October 29, 2007. W.C. also submitted a letter from her physician, Dr. Hurst, dated January 17, 2008. Dr. Hurst opined that W.C.'s impairments were "more than moderate" but "less than extreme." Specifically, Dr. Hurst noted W.C.'s pervasive and maladaptive personality traits, marked limitations in cognitive and communicative functioning, concentration and social function, and that W.C. was a danger to herself when left unsupervised.

For purposes of this analysis, each of these reports will be considered "new" because they did not exist at the time of the hearing. The issue remains whether the submitted evidence was material.

Evidence that conditions worsened after the denial of benefits is not relevant to the question of whether W.C. was eligible for disability during the period of time considered by the ALJ. *See Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th. Cir. 1989) (denied sentence six remand where reports postdating the hearing addressed only the claimant's current condition, not his condition at the time application was under consideration by the Social Security Administration). The "new" evidence submitted here does reinforce the earlier evidence of W.C.'s limitations and history of impairments, but to the extent such evidence indicates a further increase in the severity of her symptoms, it cannot be considered material.

In light of the fact that this case is being remanded for further proceedings pursuant to sentence four of 42 U.S.C. 405(g), during which proceedings additional evidence will be considered, and in light of the proposed amended onset date of disability, the court denies as moot the motion to remand under sentence six of 42 U.S.C. 405(g).

### III.  Conclusion

For the reasons discussed in this Entry, the ALJ's conclusions at step three of the sequential analysis are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

The motion to remand under sentence six of 42 U.S.C. 405(g) (dkt 12) is **denied as moot.**

W.C. has sought to amend her alleged onset date.  On remand, the Commissioner shall consider updated medical and psychological evidence and determine whether W.C. is eligible for benefits based on the amended onset date. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date:  01/21/2009

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana